IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARK ANDY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. |
| ) | |
| CARTONMASTER INTERNATIONAL ) | **JURY TRIAL DEMANDED** |
| (2012), INC., a/k/a SCANTECH ) | |
| AUTOMATION INC., and ALLAN ) | |
| PRITTIE ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

This is the complaint of Plaintiff Mark Andy, Inc. against Defendants Cartonmaster International (2012), Inc. and Allan Prittie.

## INTRODUCTION

This is a lawsuit for breach of contract, fraudulent inducement, unjust enrichment, and fraud against Defendants Cartonmaster International (2012), Inc. ("CII") and its principal owner Allan Prittie. Plaintiff Mark Andy, Inc. ("Mark Andy") is a manufacturer of printing equipment for, among other things, the label and packaging market. CII is a designer and manufacturer of finishing units that are used for, among other things, inspecting printed material for errors and slitting and rewinding the printed material. CII induced Mark Andy into signing an exclusive distributorship agreement for its finishing units by representing that it had completed engineering and manufactured at least seven of its current generation of finishing units. Additionally, CII represented that it had adequate resources to fulfill any and all orders placed by Mark Andy for these finishing units. CII's representations were false. CII had only completed one or two finishing units before signing an agreement with Mark

1

Andy, not seven.  Moreover, CII did not have adequate resources to fulfill orders placed by Mark Andy in a timely fashion.

Per the exclusive distributorship agreement, Mark Andy agreed to pay certain costs incurred by CII in the manufacture of the finishing units contingent on CII providing Mark Andy with a detailed accounting and reasonable evidence validating these costs.  Mark Andy fulfilled its end of the agreement, paying all the costs that CII reported to it.  CII did not fulfill its end of the agreement.  CII failed to provide Mark Andy with an accurate accounting of the reported costs on a timely basis.  Rather, Mark Andy received untimely reports containing costs that were not true, accurate, and complete.  Upon realizing that it had overpaid CII, Mark Andy provided CII notice of the inaccurate reporting and requested a reimbursement of the amount it had overpaid.  Despite being provided notice by Mark Andy of the inaccuracies in the reporting costs, CII refused to reimburse Mark Andy.

## JURISDICTION AND VENUE

1. Mark Andy is a Missouri corporation with its principal place of business located at 18081 Chesterfield Airport Road, Chesterfield, Missouri.

2. CII is a Canadian company incorporated under the laws of Ontario, Canada, with its principal place of business at 26-1635 Sismet Rd., Mississauga, Ontario L4W 1W5.

3. Allan Prittie is a citizen of Canada that resides in the city of Toronto in the province of Ontario.

4. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists between the parties and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## THE PARTIES

6. Mark Andy is a leader in flexible printing press manufacturing. For more than 65 years, Mark Andy has been making printing press equipment for companies printing basic tags and labels, advanced multi-web applications, and anything in between. Mark Andy is headquartered in St. Louis, Missouri, and has sales and distribution offices worldwide.

7. CII manufactures and designs finishing units that inspect printed material for errors. Additionally, the finishing units slit and rewind the printed material.

## BACKGROUND

8. On February 22, 2013, Mark Andy entered into an exclusive distributorship agreement (the "Agreement") with CII wherein CII agreed to exclusively supply Mark Andy with its finishing units. A true and accurate copy of the Agreement is attached hereto as Exhibit 1.

9. As an inducement to enter into a contractual relationship, CII represented to Mark Andy that it had previously completed engineering and manufactured at least seven of its current generation of finishing units. CII also represented to Mark Andy that it had adequate resources to fulfill any and all orders placed by Mark Andy.

10. During negotiation of the Agreement and thereafter, CII and Allan Prittie were in close and regular contact with Mark Andy in this jurisdiction. On more than one occasion, Allan Prittie traveled to St. Louis to meet with Mark Andy personnel. Following the execution of the Agreement, this contact continued.

11. Per the Agreement, Mark Andy agreed to pay CII's "Fixed Costs" and CII's "Machine Costs" on a schedule set forth in the Agreement. The Agreement defined "Fixed Costs" and "Machine Costs." CII warranted within the Agreement that the reports it made to

3

Mark Andy in relation to the "Fixed Costs" and "Machine Costs" were true, accurate, and complete in all material aspects.

12. Per the Agreement, CII was required to provide Mark Andy a detailed accounting and reasonable evidence of all reported "Fixed Costs" and "Machines Costs" on a regular basis such that Mark Andy could verify the validity of the reported costs.

13. On January 25, 2014, Mark Andy and CII amended the Agreement by adding a First Amendment ("Amendment #1") by adjusting the cost structure. Amendment #1 did not relieve CII of its duty to provide true, accurate, and complete representations of all reported costs, accountings, and evidence. A true and accurate copy of Amendment #1 is hereby attached as Exhibit 2.

14. On information and belief, CII's representation relating to its prior manufacture and design of its current generation of finishing units was false. CII had only manufactured and designed one or two such finishing units in the past.

15. On information and belief, CII's representation that it had adequate resources to fulfill any and all orders placed by Mark Andy was false. CII knew or should have known that its limited facilities and staff would be unable to adequately fulfill the quantity of orders placed by Mark Andy.

16. CII failed to provide Mark Andy with accurate accounting of the reported costs on a timely basis as required by the Agreement, thereby depriving Mark Andy of the opportunity to verify the validity of CII's reported costs. Despite CII's failure to provide a detailed accounting on time, Mark Andy continued to pay CII's reported costs in accordance with the payment terms of the Agreement.

17. On information and belief, CII reported costs to Mark Andy that were not true, accurate, and/or complete. Upon being supplied with an accounting from CII, Mark Andy discovered that CII had been including within its reported costs—for which it sought and received reimbursement from Mark Andy—general shop and office expenses that were unrelated to the manufacture and design of the finishing units. Mark Andy also discovered that CII was unable to fulfill the Agreement's requirement that it provide reasonable evidence substantiating its costs for a number of the items included within the accounting.

18. As a result of CII's inaccurate reporting of costs, Mark Andy had overpaid CII in an amount that exceeds $75,000.

## Count 1 – Breach of Contract

19. Mark Andy incorporates by reference the foregoing paragraphs as if fully set forth herein.

20. Under the Agreement, Mark Andy agreed to pay certain costs associated with CII's manufacture and design of the finishing units and CII agreed to provide Mark Andy with reports, accountings, and evidence that were true, accurate, and complete in a schedule set forth in the Agreement.

21. Mark Andy properly complied with the Agreement, paying CII the costs it reported on a timely basis. CII, failed to comply with the Agreement as it did not timely provide Mark Andy detailed accountings. Later, Mark Andy discovered that CII's reported costs had been improperly calculated and thus, the accounting was not true, accurate, and complete.

22. At least as early as April 23, 2014, Mark Andy provided notice to CII of the errors it found within the accounting and requested a refund in the amount in which it had overpaid. To date, CII has not provided Mark Andy with a refund.

23. Mark Andy provided CII with notice that its reported costs were inaccurate and that these inaccuracies resulted in an overpayment of costs by Mark Andy. Mark Andy has provided CII with multiple opportunities to refund the overpayments, yet CII has refused to do so. CII is thereby in breach of the Agreement.

24. As a direct and proximate result of the breach, Mark Andy has been damaged in an amount to be determined at trial but in an amount exceeding $75,000, exclusive of interest and cost.

## Count 2 – Unjust Enrichment

25. Mark Andy incorporates by reference the foregoing paragraphs as if fully set forth herein.

26. CII's failure to provide Mark Andy with reporting costs that were true, accurate, and complete has resulted in Mark Andy overpaying CII, thereby conferring a benefit to CII to which it is not entitled.

27. Upon learning that it had overpaid CII, Mark Andy promptly provided CII with notice of the overpayment stemming from the inaccurate reporting. Accordingly, CII either has or should have an appreciation of the unwarranted benefit conferred upon it by Mark Andy's overpayment.

28. Due to the circumstances surrounding the present situation, CII's acceptance and retention of the unwarranted benefit would be inequitable. Accordingly, CII has been unjustly enriched in a manner that has resulted in damage to Mark Andy in an amount exceeding $75,000, exclusive of interest and cost.

## Count 3 – Fraudulent Inducement

29. Mark Andy incorporates by reference the foregoing paragraphs as if fully set forth herein.

30. In February 2013, CII, via Allan Prittie, represented to Mark Andy that it had previously completed engineering and manufactured at least seven of its current generation of finishing units that it was offering to supply to Mark Andy. CII also represented that it had adequate resources to fulfill any and all orders placed by Mark Andy for the finishing units.

31. These representations made by CII to Mark Andy were false.

32. These representations made by CII to Mark Andy were material in that Mark Andy agreed to enter into the Agreement with CII specifically based on the representations made by CII that it was experienced in the manufacture and design of the finishing units and that it had adequate facilities and resources to fulfill any and all orders placed by Mark Andy.

33. CII knew or should have known that these statements were false at the time the representations were made.

34. On information and belief, CII intended Mark Andy to rely on its representations, based on CII's purportedly extensive expertise in its ability to manufacture and design finishing units.

35. At the time the representations were made, Mark Andy was unaware that the representations made by CII were false.

36. Mark Andy relied on the representations of CII in entering into the Agreement with CII to its detriment.

37. As a result of CII's material misrepresentations about its past completed engineering and manufacture of its finishing units and its ability to fulfill orders placed by Mark

Andy in a timely fashion, Mark Andy was damaged in an amount to be determined at trial but in an amount exceeding $75,000, exclusive of interest and cost.

## Count 4 – Fraud

38. Mark Andy incorporates by reference the foregoing paragraphs as if fully set forth herein.

39. Allan Prittie represented to Mark Andy that CII had previously completed engineering and manufactured at least seven of its current generation of finishing units that it was offering to supply to Mark Andy. Allan Prittie also represented that CII had adequate resources to fulfill any and all orders placed by Mark Andy for the finishing units.

40. These representations made by Allan Prittie to Mark Andy regarding CII were false.

41. At the time the representations were made, Allan Prittie, as the primary owner of CII, knew or should have known that these statements about CII were false.

42. Mark Andy relied on the representations of Allan Prittie about CII in entering into the Agreement with CII.

43. As a result of Allan Prittie's material misrepresentations about CII's past completed engineering and manufacture of its finishing units and CII's ability to fulfill orders placed by Mark Andy in a timely fashion, Mark Andy was damaged in an amount to be determined at trial but in an amount exceeding $75,000, exclusive of interest and cost.

## JURY TRIAL DEMANDED

44. Mark Andy hereby demands a jury on all triable issues.

**PRAYER FOR RELIEF**

WHEREFORE, Mark Andy, Inc. respectfully prays that judgment be entered in its favor, and against CII and Alan Prittie, on all counts:

A. Damages in an amount to be determined at trial;

B. Pre-judgment interest on this amount as allowed by law;

C. Costs of this suit;

D. All court costs, attorneys' fees and related expenses;

E. Post-judgment interest allowed by law on the total sum of these awards until judgment is fully paid by Cartonmaster International (2012), Inc.; and

F. Such other and further relief as the Court deems just under the circumstances.

                Respectfully Submitted

                **Thompson Coburn LLP**

                By: /s/ Steven E. Garlock
                   Steven E. Garlock
                   Jonathan G. Musch
                   One US Bank Plaza
                   St. Louis, MO  63101
                   (314) 552-6000
                   (314) 552-7000 (fax)
                *Attorneys for Mark Andy, Inc.*